# 14-4133

---

## UNITED STATES COURT OF APPEALS

For the

## SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

Appellee,

v.

Hao Chao, aka Sealed Defendant 2, aka Little Beijing,

Defendant

and

Xing Lin, aka Sealed Defendant 1, aka Ding Pa,

Defendant-Appellant

---

On Appeal from the United States District Court
for the Southern District of New York

---

**REPLY BRIEF FOR DEFENDANT-APPELLANT**

Megan Wolfe Benett, Esq.
750 Third Avenue, 32nd Floor
New York, New York 10017
(212) 973-3406
mbenett@kreindler.com
*Attorneys for Defendant Appellant*
*Xing Lin*

# TABLE OF CONTENTS

TABLE OFAUTHORITIES ......................................................................... ii

1. The District Court's Refusal to Accept Mr. Lin's Guilty Plea Was an Abuse of its Discretion. ........................................................................ 3

   A. Mr. Lin preserved this argument. ............................................. 3

   B. The district court's failure to adequately explain why the plea was rejected warrants relief. ........................................................ 5

   C. The district court's refusal to accept Mr. Lin's guilty plea was an abuse of discretion. .............................................................. 5

   D. Mr. Lin's admissions did not negate his intent nor did the district court find him dishonest at the plea proceeding. .......................... 9

   E. Remedy ................................................................................. 10

2. Count Three Must Be Vacated Because a Hobbs Act Extortion is Not Categorically a Crime of Violence and Because the Improper Aiding and Abetting Instruction Prejudiced Mr. Lin. ......................................... 11

3. Evidence of the Racketeering Acts Three, Four and Five Was Insufficient as a Matter of Law and the Convictions for Counts One and Two Must Be Vacated. ..................................................................................... 17

4. The Government's Rebuttal Summation Was Reckless and Improper. ....... 20

5. The Sentencing was Procedurally Flawed and the Sentence was Substantively Unreasonable. ......................................................... 22

CONCLUSION ................................................................................. 26

CERTIFICATE OF COMPLIANCE ....................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Alleyne v. United States,* 133 S.Ct. 2151 (2013)...................................................... 7

*Descamps v. United States*, 133 S.Ct. 2276 (2013) ................................................. 12

*Harris v. United States*, 536 U.S. 545 (2002)............................................................ 7

*Jamison v. United States*, 4 Fed. App'x 88 (2d Cir. 2001) ..................................... 25

*Johnson v. United States*, 135 S.Ct. 2551 (2015) .................................................... 12

*Johnson v. United States,* 559 U.S. 133 (2010) ...................................................... 12

*People v. Dubinsky*, 31 N.Y.S.2d 234 (Ct. Sp. Sess. Bronx County 1941)........... 19

*People v. Jun Feng*, 34 Misc. 3d 1205A (Crim. Ct. Kings Cty. 2015) ................. 19

*People v. Li Ai Hua*, 24 Misc.3d 1142 (Crim. Ct. Queens Cty. 2009) .................. 19

*Prado v. United States*, 815 F.3d 93 (2d Cir. 2016) ............................................... 15

*Rosemond v. United States*, 134 S.Ct. 1240 (2014)................................................ 16

*Scheidler v. Nat'l Org. for Women, Inc.,* 537 U.S. 393 (2003) ............................. 13

*United States v. Cavera,* 550 F.3d 180 (2d Cir. 2008) ........................................... 23

*United States v. Corsey*, 723 F.3d 366 (2d Cir. 2013)............................................ 22

*United States v. Couto*, 311 F.3d 179 (2d Cir.2002) ................................................ 6

*United States v. Delano*, 55 F.3d 720 (2d Cir. 1995) ...................................... 19, 20

*United States v. Dervishaj*, 169 F.Supp.3d 339 (E.D.N.Y. 2016) ......................... 14

*United States v. Hill*, 832 F.3d 135 (2d Cir. 2016)................................................. 15

*United States v. James*, 520 Fed. App'x 41 (2d Cir. 2013) ................................... 10

*United States v. Juarez-Santamaria*, 513 Fed. App'x 306 (4th Cir. 2013) ............. 3

*United States v. Kraus*, 137 F.3d 447 (7th Cir. 1998) .............................................. 5

*United States v. Lopez*, 615 Fed. App'x 24 (2015)................................................. 25

*United States v. Maher,* 108 F.3d 1513 (2d Cir. 1997) ............................................ 6

*United States v. Mancinas-Flores*, 588 F.3d 677 (9th Cir. 2009) ........................... 3

*United States v. Minicone*, 960 F.2d 1099 (2d Cir. 1992.)..................................... 25

*United States v. Payne,* 591 F.3d 46 (2d Cir. 2010) ............................................... 23

*United States v. Rea-Beltran*, 457 F.3d 695 (7th Cir. 2006).......................... 5, 6, 10

*United States v. Severino*, 800 F.2d 42 (2d Cir. 1986) .......................................... 10

*United States v. Sewell*, 252 F.3d 647 (2d Cir. 2001) .............................................. 9

*United States v. Teamsters,* 315 U.S. 521 (1942)............................................. 13, 14

ii

*United States v. Viola*, 35 F.3d 37 (2d Cir. 1994) ................................................ 16

**Statutes**

18 U.S.C. § 924 .................................................................................... passim
18 U.S.C. § 1951 ("Hobbs Act") ........................................................... passim
18 U.S.C. § 1955 ............................................................................................ 17
18 U.S.C. § 1962 .............................................................................................. 1

**Federal Rules**

Federal Rule of Criminal Procedure 11 ................................................. 6
Federal Rules of Criminal Procedure 52(b) .......................................... 15

**Other Authorities**

New York State Penal Law § 225.00 .................................................... 17

## XING LIN REPLY BRIEF

Defendant-Appellant Xing Lin tried to plead guilty to aiding and abetting a violation of 18 U.S.C. §924(c)(1)(A)(iii) pursuant to an agreement in which the parties stipulated to an advisory Sentencing Guidelines term of 120 months in prison. Though Mr. Lin's allocution established a factual basis for each element of the crime as it existed at the time of the plea, and though the district court did not find that Mr. Lin was dishonest, the court nevertheless rejected that plea, providing no reasonable explanation for doing so.

After the court rejected the plea, the government filed a superseding indictment and made no further plea offer. The superseding indictment contained five counts: racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); racketeering in violation of 18 U.S.C. § 1962(c) (Count Two); use of a firearm during and in relation to a crime of violence – Hobbs Act extortion – causing a person's death in violation of 18 U.S.C. § 924(j) (Count Three); Hobbs Act extortion in violation of 18 U.S.C. § 1951 (Count Four); and conspiracy to commit Hobbs Act extortion in violation of 18 U.S.C. § 1951 (Count Five). Mr. Lin went to trial and was convicted of all but the last count.

Count Three, however, was based on a Hobbs Act extortion that is not categorically a crime of violence. A Hobbs Act extortion can therefore not serve as the requisite predicate crime of violence for purposes of Count Three. The

1

conviction for Count Three is rendered even further infirm by the incorrect aiding and abetting jury instruction on the charge, which even the government acknowledges improperly allowed the jury to convict Mr. Lin even if he did not have advance knowledge that his companion had a firearm. The conviction for Count Three must therefore be vacated and the charge dismissed.

Counts One and Two were racketeering charges with five underlying acts, three of which were individual instances of operating gambling parlors in violation of the federal Illegal Gambling Practices Act ("IGBA") (Acts Three, Four and Five.) The government offered no facts supporting a finding that the games violated New York State gambling laws, as required for a conviction under the IGBA, Acts Three, Four and Five therefore rested on non-existent evidence. Further, if Acts Three, Four and Five were to be vacated, the remaining two racketeering acts would be insufficient to support the convictions on Counts One and Two and those must also be vacated.

Following improper argument in the government rebuttal, unduly prejudicing Mr. Lin, the district court sentenced him to life in prison. In doing so, the court spent mere seconds discussing the nature of the offense and Mr. Lin's history and characteristics. The district court procedurally erred insofar as it did not engage in a Sentencing Guidelines calculation or an analysis of the 18 U.S.C.

§ 3553(a) sentencing factors and provided a sorely inadequate description of its

decision-making.[1]

### 1. The District Court's Refusal to Accept Mr. Lin's Guilty Plea Was an Abuse of its Discretion.

The government argues that Mr. Lin did not satisfy all of the elements of 18

U.S.C. § 924(c)(1)(A)(iii) and that he was "not entirely truthful" during the

allocution, but the record disproves both arguments. *See* Gov't Brief, p. 21.

### A. Mr. Lin preserved this argument.

Contrary to the government's contention, the record establishes that Mr. Lin

did not waive his right to challenge the district court's rejection of his plea. As

other Circuit Courts have held, a defendant who has attempted to plead guilty only

to have the plea rejected need not further ask the court to reconsider its position in

order to preserve the claim for appeal purposes. *See United States v. Mancinas-*

*Flores*, 588 F.3d 677, 688 (9th Cir. 2009); *United States v. Juarez-Santamaria*,

513 Fed. App'x 306, 309 (4th Cir. 2013).

After the long hearing on June 27, 2012, the judge opined "[w]ell, it is a

very close question. I will accept the plea, but I would really like to hear another

---

[1] In appellant's opening brief, counsel noted that there was no Statement of Reasons filed in this case. That representation was based on review of the file materials transferred by trial counsel, an examination of the docket and a visit to the records office, none of which revealed any Statement of Reasons. As the government noted in its brief, however, the district court did file a Statement of Reasons.

3

allocation." A. 84.[2]  Disagreeing that anything further was necessary, defense

counsel said "I think your Honor, respectfully, he has tried to answer your

Honor's questions." A. 84.  Nevertheless, the district court would not accept the

plea and required the parties to return the next day. A. 84, 86.  Mr. Lin realized he

could not say more than he had already admitted and which the court had rejected.

A. 91 (counsel explaining "I'm not certain that a little bit more time for me to

spend with [Mr. Lin] would be productive.")  Mr. Lin did not withdraw his plea,

but, rather as the district court expressly stated "I rejected the plea, if you recall."

A. 199.  That upon his return to court, Mr. Lin did not again try to plead guilty and

add to the (already sufficient) factual allocation does not constitute a waiver of

any argument about the plea.

If there has been any waiver in connection with this argument, it was by the

government.  As the prosecutor explained in the plea proceeding he had "been

listening awfully closely and taking a lot of notes" and he "believe[d] the

defendant's allocation is sufficient to satisfy the elements of the crime that he's

pleading guilty to."  A. 77.  If on June 27, 2012 the government thought Mr. Lin's

admissions sufficiently established the elements of the crime and that he was

credible, it should not be allowed to now argue otherwise.

---

[2] References to the Appendix are noted as "A." followed by the page number.

4

### B. The district court's failure to adequately explain why the plea was rejected warrants relief.

While the Second Circuit appears not to have established specific requirements as to what a court must place on the record when rejecting a guilty plea, other Courts of Appeals have opined that if a court "elects to reject a plea agreement, it must be able to articulate a sound reason for doing so. Requiring the court to state on the record its reasons for rejecting a plea agreement is the surest way to foster the sound exercise of judicial discretion." *United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998) (internal citations and quotation marks omitted.) Accordingly, failing to place on the record the reasons for rejecting a plea "requires reversal." *United States v. Rea-Beltran*, 457 F.3d 695, 701 (7th Cir. 2006). Under that standard, the district court's minimal explanation for rejecting the plea in this case – neither stating whether the court found Mr. Lin dishonest nor clearly articulating what elements of the crime she believed had an insufficient factual basis –warrants reversal.

### C. The district court's refusal to accept Mr. Lin's guilty plea was an abuse of discretion.

Though courts retain wide discretion in deciding whether to accept a guilty plea, when a court rejects a knowing and voluntary plea because of a misapprehension of the law, a reviewing court has "no choice but to find an abuse of discretion in the court's refusal to accept [the defendant's] guilty plea." *Rea-*

*Beltran*, 457 F.3d at 702; *United States v. Couto,* 311 F.3d 179, 185 (2d Cir.2002) (in the plea context a "'district court abuses its discretion if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.'") (internal citation omitted).

Federal Rule of Criminal Procedure 11 requires a court to find a factual basis for the plea, but this requirement is not to function as a mere mechanism for rejecting factually sufficient pleas. Rather, Rule 11 is intended to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *See* Fed.R.Crim.P. 11, advisory committee's note (1966 Amendments.) This provision requires the district court "to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher,* 108 F.3d 1513, 1524 (2d Cir. 1997).

As the government implicitly concedes, at the time of the plea proceeding, discharge of a firearm was not considered an element of an 18 U.S.C. § 924(c)(1)(A)(iii) violation. *See* Gov't Brief, p. 21 (relying on Supreme Court caselaw "decided after Lin attempted to plead guilty….") Rather, the crime required proof only of the use, carrying or possession of a firearm in relation to a crime of violence or a narcotics crime. *Harris v. United States*, 536 U.S. 545

6

(2002). The discharge of the weapon was simply a sentencing factor. *Id.*; *c.f.*
*Alleyne v. United States,* 133 S.Ct. 2151 (2013) (overruling *Harris* and holding
that each fact raising the minimum sentence is an element of the crime.) While
the government argues that the plea was factually insufficient because Mr. Lin
"[d]espite being asked multiple times … was unable to allocute to *knowing or*
*intending that [Little Beijing] would discharge the firearm*," that was not what
had to be established at the time of the plea. Gov't Brief, pp. 21 – 22 (emphasis
added).

　　　As the district court itself later articulated when instructing the jury, the
elements of 18 U.S.C. § 924(c)(1)(A)(iii) (which mirrored all of the elements of
Count Three at trial but for a resulting death) were that:

- Another person "committed the offense" of possessing the firearm in relation to an extortion conspiracy;
- Mr. Lin "participated in the crime charged as something he wished to bring about";
- He "associate[d] himself with the criminal venture knowingly and willfully"; and
- He sought "by his actions to make the criminal venture succeed."[3]

At the plea proceeding, Mr. Lin admitted that:

- Chan Qin Zhou had a bus business that competed with his and he wanted to take over the competing business (A. 58, 61);

---

[3] It is especially perverse that the district court set forth these elements of the
crime in the jury charge, which were precisely what the parties implored the judge
to employ at the time of the plea.

7

- Prior to July 29, 2004, Mr. Lin had told Mr. Zhou that if he did not give Mr. Lin money (in exchange for which Mr. Zhou would be allowed to continue operating a bus business), Mr. Lin would do him harm (A. 66 – 67);
- The last time Mr. Lin and Mr. Zhou spoke (a few months before the shooting), Mr. Lin told Mr. Zhou to "give me the bus company" – that is, Mr. Lin wanted Mr. Zhou to hand over the bus company for "[j]ust a little bit" of money – but Mr. Zhou refused to do so (A. 69 – 70);
- Little Beijing was Mr. Lin's bodyguard and worked for Mr. Lin (A. 66);
- Mr. Lin generally expected Little Beijing to follow his orders (A. 66);
- Mr. Lin knew that Little Beijing had a gun with him on July 29, 2004 (A. 66);
- Knowing that Mr. Zhou was at the karaoke bar on July 29, 2004, knowing his bodyguard was armed, expecting his bodyguard to follow his orders and wanting his bodyguard to physically assault Mr. Zhou given their dispute over control of the bus routes, Mr. Lin told Little Beijing "to teach [Mr. Zhou] a lesson" (A. 57, 66, 74 – 75.)

Those admissions established that Mr. Lin was threatening Mr. Zhou into relinquishing a competing commercial enterprise or pay protection money (the extortionate conduct), that Mr. Lin and his bodyguard agreed to threaten Mr. Zhou in connection with the effort to obtain the commercial business or cash (the conspiracy conduct) and, at the time that Mr. Lin told his bodyguard to threaten Mr. Zhou, he knew his bodyguard was carrying a firearm (the aiding and abetting conduct). The district court was simply incorrect in concluding that Mr. Lin's plea did not establish the elements of the changed crime.[4]

---

[4] This error is further confirmed by the court's comment two weeks later that "Without any intention that the body guard shoot it is very hard to establish aiding and abetting." A. 102.

### D. Mr. Lin's admissions did not negate his intent nor did the district court find him dishonest at the plea proceeding.

Mr. Lin's statement that he had been drunk at the time of the incident could not vitiate his plea admissions. *See* Gov't Brief, p. 22 (Lin "claimed to be drunk at the time of the shooting, further negating intent."). There was no statement or representation that Mr. Lin's drunkenness bore on his responsibility for the crime and the record reveals no questions from the court about intoxication. Further, intoxication is not an available defense in this Circuit to a general intent crime such as an 18 U.S.C. § 924(c) violation, so the government's reliance on Mr. Lin's "drunk" comment is wholly inapt. *See United States v. Sewell*, 252 F.3d 647, 650 (2d Cir. 2001) ("We now hold that voluntary intoxication does not negate the intent element of a crime of general intent[.]")

The government is incorrect, too, when it states that Mr. Lin "was not truthful" during the allocution. Gov't Brief, p. 22. While a district court can reject a factually sufficient plea if it believes the defendant is being untruthful, it must make such a finding on the record. The district court made no such finding in this case. Though the district court commented that some of the statements Mr. Lin made were "a little weird" (when parsing out the history of the relationship between Mr. Lin and Little Beijing) and that Mr. Lin was "reluctant" to fully admit guilt, the court never opined that Mr. Lin lacked credibility or that he was being dishonest. This case is thus distinguishable from those situations in which

9

defendants deny having committed an element of the crime to which they are
pleading guilty.[5]

The district court here made no such finding, nor does the record support
that conclusion. Rejecting a factually-sufficient plea because the defendant was
reluctant at his plea allocution or because his relationship with his co-conspirator
was "weird" – if, indeed, either was the basis for the rejection – constitutes an
abuse of discretion.

### E. Remedy

For all of these reasons, the convictions here must be vacated and the matter
remanded for acceptance of Mr. Lin's guilty plea to a single count of 18 U.S.C. §
924(c)(1)(A)(iii). *See Rea-Beltran*, 457 F.3d at 703 (vacating conviction and

---

[5] In *United States v. Severino*, 800 F.2d 42, 45 (2d Cir. 1986), for example, the
district court's rejection of a defendant's plea was affirmed on appeal because the
only evidence as to the defendant's intent to distribute narcotics was his own
statement and after his allocution the district court explained "that based on 'the
totality of his responses, she did not believe Severino was being truthful." *Id.* at
45. The government also cites to *United States v. James*, 520 Fed. App'x 41 (2d
Cir. 2013) when arguing that Mr. Lin was "dishonest" during his plea allocution.
In *James*, however, the defendant repeatedly failed to admit to entering into an
agreement to sell marijuana nor could he acknowledge that the marijuana
distribution involved the statutory minimum weight, both of which were several of
the elements of the charged marijuana conspiracy – he was seriously "confused"
but not dishonest. *Id.* That case, therefore, better fits within the absence of a
factual basis line of decisions, not the dishonest defendant line element of the
crime to which he was pleading guilty. *James*, 520 Fed. App'x at 44.

remanding "with instructions to permit [the defendant] to offer a guilty plea on the terms originally agreed to by the Government.")

**2. Count Three Must Be Vacated Because a Hobbs Act Extortion is Not Categorically a Crime of Violence and Because the Improper Aiding and Abetting Instruction Prejudiced Mr. Lin.**

The government has offered no convincing answer to either of Mr. Lin's arguments that a Hobbs Act extortion is not categorically a crime of violence because: (1) the statute is indivisible and the "color of official right" element can be committed by mere misuse of public office and (2) even if divisible, the non-color of right extortion can likewise be committed without the requisite acts of force, violence or fear and without a substantial risk of the use of physical force.

As to the first argument, the government is nearly silent, simply "[p]utting aside," the point that a "color of official right" extortion is not categorically a crime of violence and instead conclusorily claiming that the "color of official right" extortion is divisible from other acts of extortion, but never offering any argument for why that may be. Gov't Brief, pp. 28 – 29. For the reasons set forth in Mr. Lin's opening brief, however, the Hobbs Act extortion statute is not divisible, the "color of official right" extortion can be committed without the requisite force and a Hobbs Act extortion is therefore not categorically a crime of violence. Appellant Brief, pp. 38 – 42.

11

Even if the Hobbs Act extortion statute can be divided, a non-color of official right extortion charge cannot constitute the predicate crime of violence element for purposes of the 18 U.S.C. § 924 violation. The government's focus on the specific offense conduct in this case employs the very approach that the Supreme Court has repeatedly rejected. *See* Gov't Brief, pp. 28-29.

To determine whether a crime satisfies a predicate requirement, the Supreme Court has directed courts to "use … the 'categorical approach.'" When doing so, courts are expressly prohibited from reviewing any facts underlying the proposed predicate offense. *See Johnson v. United States,* 559 U.S. 133, 144 (2010). In no event may a court go beyond "the statutory definitions – i.e., the elements – of a defendant's [offense]" and consider "the particular facts underlying [the offense]" when determining whether the offense qualifies as a "crime of violence." *Descamps v. United States*, 133 S.Ct. 2276, 2283 (2013) (citation omitted); *see also Johnson v. United States*, 135 S.Ct. 2551 (2015).

Given the clear Supreme Court prohibition on consulting underlying facts when determining whether an offense satisfies the elements of a predicate crime of violence, the government's reliance on the facts of Mr. Lin's case is entirely misplaced. *See* Gov't Brief, pp. 28 – 29. As salacious or even violent as the specific conduct here may have been, the salient question is whether every variation of conduct satisfying the elements of a Hobbs Act extortion will always

have as an element either the attempted, threatened or actual use of force or will always by its nature involve a substantial risk of the use of physical force. The history and application of the Hobbs Act extortion statute make clear that the answer to those questions is no.

In a 2003 exegesis on the Hobbs Act, the Supreme Court reviewed the history of the statute when concluding that abortion-clinic protestors had not obtained or attempted to obtain property from the plaintiff organizations. *See Scheidler v. Nat'l Org. for Women, Inc.,* 537 U.S. 393, 402–09 (2003). Its analysis of the statutory history illustrates how and why a Hobbs Act extortion is not categorically a crime of violence for purposes of 18 U.S.C. § 924.

> At common law, extortion was a property offense committed by a public official who took "any money or thing of value" that was not due to him under the pretense that he was entitled to such property by virtue of his office. In 1946, Congress enacted the Hobbs Act, which explicitly expanded the common-law definition of extortion to include acts by private individuals. … Congress used two sources of law as models in formulating the Hobbs Act: the Penal Code of New York and the Field Code, a 19th-century model penal code. … Both the New York statute and the Field Code defined extortion as "the obtaining of property from another, with his consent, induced by a wrongful use of force or fear, or under color of official right." 4 Commissioners of the Code, Proposed Penal Code of the State of New York § 613 (1865) (reprint 1998) (Field Code); N.Y. Penal Law § 850 (1909).

*Id.*, 403 (internal citations and quotation marks omitted). The Supreme Court then turned to Congress' reaction to the Court's decision in *United States v. Teamsters,* 315 U.S. 521 (1942), when drafting the Hobbs Act in order to tease out the

13

conduct that was intended to fall within the statute.  In *Teamsters*, the Supreme

Court had considered a conviction under the 1934 Anti-Racketeering Act, the

predecessor to the Hobbs Act, found an exception for conduct by

> union truck drivers who exacted money by threats or violence from
> out-of-town drivers in return for undesired and often unutilized
> services.  Congressional disapproval of this decision was swift, and
> the Hobbs Act was subsequently enacted to supersede the Anti–
> Racketeering Act and reverse the result in *Teamsters.*

*Id.*, 407 (internal citations and quotation marks omitted).  Thus,

> after *Teamsters,* a paramount congressional concern in drafting the
> Hobbs Act was to be clear about what conduct was prohibited.
> Accordingly, the Act carefully defines its key terms, such as
> 'robbery,' 'extortion,' and 'commerce.' … We have said that the
> words of the Hobbs Act do not lend themselves to restrictive
> interpretation because they manifes[t] ... a purpose to use all the
> constitutional power Congress has to punish interference with
> interstate commerce by extortion, robbery *or* physical violence.

*Id.* (emphasis added) (internal citations and quotation marks omitted.)

Prosecutions and convictions under the Hobbs Act confirm that the statute's reach

extends far beyond interference with commerce by use of force to include, for

example, the risk or fear of economic loss.[6]  Hobbs Act extortions therefore can

---

[6] The government cites to a district court case in the Eastern District of New York
in which a Hobbs Act extortion was held to be a predicate crime of violence for
purposes of 18 U.S.C. § 924(c). *See* Gov't Brief, p. 29; *United States v. Dervishaj*,
169 F.Supp.3d 339 (E.D.N.Y. 2016).  The district court's decision engaged in
little analysis about whether a Hobbs Act extortion is categorically a crime of
violence and its reasoning is therefore unpersuasive.

and have been accomplished by non-forceful means. *See* Appellant's Brief, pp.

43-46; *compare United States v. Hill*, 832 F.3d 135, 143 (2d Cir. 2016) (rejecting

argument that Hobbs Act robbery was not categorically a crime of violence based

on "hypotheticals" but not actual "other cases.")

Thus, as a Hobbs Act extortion does not necessarily require the use,

attempted use or threatened use of force nor does it present a substantial risk of

the use of physical force, it is not categorically a crime of violence under the force

clause, and cannot serve as an 18 U.S.C. § 924 predicate. [7]

Further imperiling the conviction on Count Three were the jury instructions

on aiding and abetting. As the government has conceded, those instructions were

incorrect. *See* Gov't Brief, pp. 29 – 32. The only dispute, then is: (1) whether a

modified plain error standard should apply and (2) whether the erroneous jury

---

[7] The parties do not disagree that the plain error standard of review applies to this point. The only disagreement as to the standard is whether it should be a modified plain error standard, in light of intervening changes in the law, in which case the government would bear the burden of establishing that Mr. Lin had not been prejudiced by the error. *Prado v. United States*, 815 F.3d 93, 102 (2d Cir. 2016). The government, however, has argued only that there was no error on Count Three, and has failed to present any argument whatsoever that Mr. Lin's substantial rights were not affected nor that the error did not seriously affect the fairness of judicial proceedings. Thus, under either the modified or the traditional plain error standard, if there was an error that was plain, Mr. Lin is entitled to relief. *See* Fed.R.Crim.P. 52(b).

instruction affected Mr. Lin's substantial rights and the fairness, integrity and public reputation of the proceedings.

Here, the intervening change in the law between trial and appeal – the Supreme Court's decision in *Rosemond v. United States*, 134 S.Ct. 1240 (2014) – warrants application of the modified plain error standard, placing on the government the burden of proving that Mr. Lin was not prejudiced by the error. *See United States v. Viola*, 35 F.3d 37, 42 (2d Cir. 1994) (defendant "clearly has no duty to object to a jury instruction that is based on firmly established circuit authority.")

Under either standard, however, allowing the jurors to return a verdict of guilty without requiring them to find that Mr. Lin had advance knowledge that the firearm would be discharged affected Mr. Lin's substantial rights and seriously affected the fairness, integrity, or public reputation of the proceedings. Had the jury been properly instructed, there is a reasonable probability that he would have been acquitted of Count Three. The trial record contains no evidence that Mr. Lin knew that Little Beijing was armed before they entered the private karaoke room and the proof that Mr. Lin knew that Little Beijing had a weapon at all was based on testimony that was inconsistent and not credible. *See* Appellant's Brief, pp. 49-50. Under these circumstances, there is a reasonable probability of a different

16

outcome had the jury been properly instructed.  The conviction for Count Three must be vacated.

### 3. Evidence of the Racketeering Acts Three, Four and Five Was Insufficient as a Matter of Law and the Convictions for Counts One and Two Must Be Vacated.

To convict Mr. Lin of Counts One and Two the jury had to have been presented with proof beyond a reasonable doubt that Mr. Lin had committed at least two predicate racketeering acts.  Following all evidence, the jury was provided five potential racketeering acts, three of which were violations of the IGBA and all of which required proof beyond a reasonable doubt that the acts violated New York State gambling laws. *See* 18 U.S.C. § 1955(b)(1)(i).  To have found a violation of the state gambling charges at issue here, a jury would have had to have been presented with evidence that tien lin and mahjong constituted "contests of chance." *See* New York State Penal Law § 225.00 ("Gambling offenses; definitions of terms.")  A contest of chance is one "in which the outcome depends in material degree upon an element of chance." *Id.*

The government cites to conclusory trial testimony about "gambling," but can offer no response to the argument that the record is wholly absent of any description of those activities. *See* Gov't Brief, pp. 32-37.  While witnesses testified about "betting" and "gambling," they did not provide any basis for the jury to conclude, as it had to, that tien lin and mahjong were, as the district court

17

instructed, games "in which the outcome depends in a material degree on chance." A. 697. Without testimony concerning how those games were played, the jury could not have reasonably inferred that tien lin and mahjong depend in material degree on chance. That the physical premises had no signage does not in and of itself imply that the games held within the locations were contests of chance. *See* Gov't Brief, p. 36. Nor does the exchange of currency at the locations bear on the nature of the games. *Id.* Similarly, a conclusory description of "gambling" presupposes the very issue presented by Racketeering Acts Three through Five – what *is* gambling? The government cannot prove its case by reciting a statutory element, offering testimony reciting the statutory element while offering no facts to establish that element. In this case, the jury had *no* information about the activities and an inference that the games depended to a material degree on chance was simply unreasonable.[8]

The cases cited by appellant in the opening brief are directly on point here. That a New York State court held that it was necessary for a complaint to include "a *factual basis* for the detective's conclusion that mahjong is gambling" is the

---

[8] Neither the court nor the attorneys could conclude from the testimony that tien lin depended in material degree on chance, either. A. 664 (district court: "The one thing I didn't learn from this trial is how to play 13 cards"; government: "I know. I'm still trying to learn. I can look it up on the internet.") If the prosecution does not know how the activity works, it is hard to imagine how the jury could have inferred its operation.

charging corollary to the argument here. *People v. Li Ai Hua*, 24 Misc.3d 1142 (Crim. Ct. Queens Cty. 2009) (emphasis added); *People v. Jun Feng*, 34 Misc. 3d 1205A (Crim. Ct. Kings Cty. 2015) (after hearing evidence on how mahjong was played at a particular location, denying motion to dismiss promotion of gambling charge under New York State law).[9]  Without a "factual basis" for demonstrating that mahjong or any other activity is gambling – whether in a charging instrument or a trial record – the allegation lacks necessary support.

While the jury still returned a verdict of proven on Racketeering Acts One and Two, those two findings came following a trial that was utterly dominated by testimony about the so-called gambling parlors.  That warrants reversal of the conviction for Counts One and Two. Without the gambling, the government's case was not about racketeering, but was about a fight over control of certain bus routes that ultimately ended in violence.  Those two acts alone do not establish a racketeering pattern as they did not pose a threat of continued criminal activity. To say that a jury "would have found the two 'constituents of RICO pattern requirement,' a threat of continued criminal activity plus relatedness, solely on the

---

[9] The government cites to *People v. Dubinsky*, 31 N.Y.S.2d 234 (Ct. Sp. Sess. Bronx County 1941), but that case involves an earlier statute and includes no discussion on the evidence necessary to establish that an activity constituted a game of chance.  It is therefore not helpful on what evidence is necessary to establish a violation of the current New York State penal law prohibitions against gambling activities.

basis of the two [remaining] predicates" – the murder and the Hobbs Act extortion – "would be too speculative to assume … ." *United States v. Delano*, 55 F.3d 720, 729 (2d Cir. 1995). Recognizing this, the government relied heavily on the testimony about the tien lin and mahjong activities when arguing the existence of a pattern of racketeering. Without those predicate acts, a jury may well have rejected the pattern theory and acquitted on the racketeering counts. Counts One and Two should therefore be vacated.

### 4. The Government's Rebuttal Summation Was Reckless and Improper.

To call a criminal defendant's theory of the case, which was based primarily on witness credibility, an "alternative universe" is to tell jurors that the defendant bears a burden to present a plausible alternate argument. A. 689. To suggest that the defendant must explain evidence, such as his car being at or near the scene of the shooting, is to tell the jury that the defendant bears a burden to interpret the evidence. A. 684. To argue that a criminal defendant could have – but did not – call someone as a trial witness is to instruct jurors that the missing witness's absence from trial was the fault of the defendant. A. 683. All of that amounted to improperly shifting the burden of proof from the government to the defense.

The burden shifting was compounded by the scurrilous personal attacks on defense counsel. The prosecution overtly argued that defense counsel was

20

criticizing the government attorneys (A. 683); the prosecution then criticized defense counsel personally for his "audacity" (A. 682); and the prosecution cast aspersions on defense counsel for arguing "that in the wake of this horrific murder" the witnesses "came together and decided to frame Xing Lin." A. 683. The last comment is especially troubling, considering that no matter what strategy defense counsel employed, he would have been pursuing it "in the wake of this horrific murder." If the prosecution is allowed to criticize an attorney for mounting a witness credibility defense in a murder case, it is hard to imagine any defense that would not be subject to the same sort of personal attacks.

Last, on top of the burden-shifting and *ad hominem* attacks, the prosecution repeatedly told the jurors that he believed the witnesses had testified truthfully, thus offering his own opinion as assurance to the jury to place trust in the government witnesses, and thereby impermissibly vouching for witnesses with serious credibility problems. A. 684.

That defense counsel reminded the jury that it could not hold the government to a lesser burden out of some misplaced sense of sympathy for the prosecution because its witnesses "were a bunch of clowns," was not an invitation for the improper rebuttal. A. 674. It was a fair comment on the government witnesses' credibility problems and did not excuse the argument here. The

government's errors during rebuttal, compounding one another and inadequately addressed by the court, warrant reversal of the convictions here.

**5. The Sentencing was Procedurally Flawed and the Sentence was Substantively Unreasonable.**

After rejecting Mr. Lin's 2012 effort to plead guilty with a stipulated guidelines range of 120 months, the district court in 2014 spent less than a minute discussing the various sentencing factors – including the nature of the offense and Mr. Lin's personal history and characteristics – and imposed a term of life in prison. This was both procedurally and substantively flawed.

As the government concedes, the sentencing hearing was brief. *See* Gov't Brief, p. 58. Contrary to its suggestion, however, the nature of the proceedings below, including the rejected plea agreement and the lengthy trial, as well as the Probation Department's Presentence Investigation Report ("PSR"), which included a complex – and incorrect – offense level calculation, called for a more extensive sentencing proceeding, not the cursory event that preceded the imposition of a life sentence here.

While, as a general matter, "a judge need not chronicle the deliberative journey taken to arrive at a sentence," nevertheless "she must still create enough of a record so that an appellate court can 'be confident that the sentence resulted from the district court's considered judgment as to what was necessary to address the various, often conflicting, purposes of sentencing.'" *United States v. Corsey,*

22

723 F.3d 366, 376 (2d Cir. 2013) *as corrected* (July 24, 2013) (vacating and remanding for resentencing), *citing United States v. Cavera,* 550 F.3d 180, 189–90 (2d Cir. 2008). That is, just as this Court does "not insist upon 'robotic incantations,'" it does "require more than a few magic words." *Id.*

The record in this case shows only the rote imposition of a life term of imprisonment, with nothing but the facts of the underlying convictions explaining the sentence.

A district court may satisfy its sentencing obligations "to make the requisite specific factual findings when it explicitly adopts the factual findings set forth in the presentence report" and may do so "either at the sentencing hearing or in the written judgment it files later." *United States v. Payne,* 591 F.3d 46, 70 (2d Cir. 2010). When primarily relying on a PSR, however, some additional assurance is needed to guarantee that the sentencing court actually engaged in an analysis of the sentencing factors. *Id.* So, for example, while filing a Statement of Reasons expressly stating that the PSR is being adopted may provide some evidence of procedural reasonableness, the Statement of Reasons should be accompanied by other findings by the court. *Id.* (affirming when district court filed a Statement of Reasons adopting PSR and also conducted a sentencing hearing the transcript of which demonstrated the court's engagement with the Sentencing Guidelines.)

23

The government's reliance on the Statement of Reasons does not save the procedural errors here. *See* Gov't Brief, pp. 58-59. That document reveals only a box checked off noting that the PSR was adopted with the PSR's offense level, Criminal History Category and the ultimate sentence filled in. It also, however, simultaneously includes a box checked off incorrectly stating that the sentence was within an advisory guidelines range not greater than 24 months. The Statement of Reasons was not supported by any other extensive analysis, as the submissions before the court prior to sentencing were hardly "detailed." *See* Gov't Brief, p. 58. The prosecution devoted only nine lines to the issue of the Sentencing Guidelines calculation, and the defense none. A. 729-33, 734-39, 744-46. Little more attention was spent on the 18 U.S.C. § 3553(a) factors. A. 729–33, 723-39, 744-46. Both the government and the defense largely revisited the trial testimony in their submissions. A. 723 – 46.

Additionally, as to the question of whether the first- or second- degree murder Sentencing Guideline should have been used in this case, under the specific facts here, the district court erred when adopting the PSR's calculation based on first-degree murder. Contrary to the government's suggestion, this Circuit has not held that application of the first-degree murder guideline for an underlying act of second-degree murder is, as a matter of law, correct. Rather, it is only that application of this guideline may be justified if a sentencing court

24

finds that on the specific facts first-degree murder is "more analogous" than the second-degree murder guideline. *See Jamison v. United States*, 4 Fed. App'x 88, 90 - 91 (2d Cir. 2001) (*"Minicone*, however, merely held that application of the guideline for first-degree murder was not error; we did not rule that application of that guideline was mandatory even if a sentencing court found some other guideline more analogous on the facts before it") (citing *United States v. Minicone*, 960 F.2d 1099 (2d Cir. 1992.)). On the specific facts here, in which the government expressly argued that premeditation was not an element of any of the Group One murders, the most analogous offense was not first-degree murder but, rather, second-degree murder. A. 659 – 60, 713 – 18. The application of the first-degree murder guideline was wrong, further rendering the sentence here procedurally flawed.

Last, the explanation of any given sentence should be commensurate to the circumstances, with cases involving serious sentencing consequences warranting more detail and discussion than less serious cases. *United States v. Lopez*, 615 Fed. App'x 24 (2015) ("When a district court explains its sentencing decision, 'the length and level of detail required varies depending upon the circumstances.'") A life sentence is second only to the death penalty in seriousness and required an explanation beyond what was provided here.

As to the substantive unreasonableness of the sentence, Mr. Lin relies on the arguments presented in his opening brief. Appellant's Brief, pp. 74 - 75.

## CONCLUSION

For all of the reasons stated above and in Xing Lin's opening brief, he respectfully asks that: (1) his convictions be vacated and he be allowed to plead guilty to the previously authorized superseding information; (2) that his convictions be vacated (because of improper government rebuttal) and the case remanded for retrial; (3) that the convictions of Counts One, Two and Three be vacated (because Counts One and Two were unsupported by the evidence and Count Three is legally insufficient), that Count Three be dismissed and the other counts remanded for retrial; or (4) that his sentence on all counts be vacated and the matter remanded for resentencing.

Dated this 21[th] day of December 2016.

Respectfully submitted,

By: /s/ Megan Wolfe Benett
Megan Wolfe Benett, Esq.
750 Third Avenue
New York, NY 10017
Telephone: (212) 973-3406
Facsimile: (212) 972-9432

*Attorney for Defendant-Appellant, Xing Lin*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, pursuant to Fed.R.App.P. 32(a)(7)(B) and Second Circuit Rule 32-1, that this brief is reproduced using proportional typeface of Times New Roman, 14 points in size, is double-spaced and consists of 6576 words, as calculated in the word count program in Microsoft Word, including footnotes and headings and quotations.

Dated:  December 21, 2016

By_____/s/ Megan Wolfe Benett